IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DAVE JAMES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| COLLIN COUNTY, TEXAS, JOE JAYNES, | § | Case No. 4:05-CV-98 |
| PHYLLIS COLE, JERRY HOAGLAND, | § | |
| JACK HATCHELL, RON HARRIS, and | § | |
| JON KLEINHEKSEL, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The following are pending before the court:

1. Defendants' motion for summary judgment and brief in support (docket entry #37);

2. Plaintiff's motion to strike evidence (docket entry #39);

4. Plaintiff's response to Defendants' motion for summary judgment and brief in support (docket entry #40);

5. Defendants' response in opposition to Plaintiff's motion to strike (docket entry #41);

6. Defendants' reply in support of motion for summary judgment (docket entry #43);

7. Defendants' objections and motion to strike Plaintiff's summary judgment evidence (docket entry #44);

8. Plaintiff's sur-reply to Defendants' motion for summary judgment (docket entry #45);

9. Plaintiff's response to Defendants' objections (docket entry #'s 46 & 47); and

10. Defendants' reply in support of their objections and motion to strike Plaintiff's summary judgment evidence (docket entry #48).

Having considered the above-referenced motions and the subsequent briefing, the court is of the opinion that Defendants' motion for summary judgment should be granted.

## MOTIONS TO STRIKE EVIDENCE

The Plaintiff urges the court to strike that portion of the Defendants' evidence regarding the Plaintiff's disciplinary history prior to 1999. The Plaintiff argues that any such disciplinary actions are not relevant to the matters herein and are remote in time. Conversely, the Defendants urge the court to strike that portion of the Plaintiff's declaration which refers to certain favorable comments about the Plaintiff's job performance. The Defendants argue that because the complimentary remarks were not issued by the Plaintiff's supervisors or by other Collin County employees within the Plaintiff's reporting structure, the comments are not relevant. Having considered the Plaintiff's and the Defendants' motions to strike such evidence, the court declines to do so. The court finds that the Plaintiff's entire employment record provides the court with an accurate and more complete depiction of the Plaintiff's work history with Collin County.

Additionally, the Defendants object to certain portions of the Plaintiff's declaration on evidentiary grounds and move to strike the same. Having considered the Defendants' objections, the court notes that it will review the evidence provided in accordance with the appropriate summary judgment and evidentiary standards.

## BACKGROUND

The Plaintiff began working for Collin County in 1996 as an assistant purchasing agent. The Plaintiff became a buyer in 1997 and a foreman in 1998. As a foreman, the Plaintiff reported to the Superintendents of Public Works, Mike McClatchy and James Lorance, as well as the Director of Public Works, Jon Kleinheksel. While employed at Collin County, the Plaintiff received both

accolades and reprimands.

During his tenure at Collin County, the Plaintiff twice sought public office. The Plaintiff made his first bid for the office of County Commissioner during the 2000 election cycle. The Plaintiff's campaign was unsuccessful. The Plaintiff again sought the office of County Commissioner during the 2004 election cycle; the result, however, was the same.

After announcing his intent to run for public office in the 2000 election, the Plaintiff was advised, via memorandum, of Collin County's policy concerning political involvement and the sections of the Texas Penal Code that prohibit employees from misusing County property, services and personnel. The memorandum provided, in pertinent part, as follows:

> On Friday, January 22, 1999, you informed me of your intention to seek the office of Collin County Commissioner during the Year 2000 campaign. As I informed you in that meeting, the County Personal [sic] Policy Manual states in Section 9.6 Political Involvement:
>
> *"Collin County employees will not be allowed to perform or be involved in political campaigning or related activities during their normal working hours, while in County uniform, or while using County vehicular equipment. Additionally, no County employee shall be required to participate in political campaigns or related activities as a condition of obtaining or retaining employment"*

Def. Mtn. for Summ. Judg., Def. App. 104. The Plaintiff did not receive any reprimands in connection with his 2000 campaign.

On May 8, 2003, the Plaintiff received a written reprimand from Kleinheksel for the Plaintiff's unprofessional demeanor.[1] Also on May 8, 2003, the Plaintiff met with Amy Krueger, Senior Human Resources Manager, to discuss a variety of issues, some of which included the

---

[1] The Plaintiff insists that the May 8, 2003 reprimand was in response to his attendance at the May 3, 2003 Collin County Commissioner's meeting. The Defendants assert that the Plaintiff was reprimanded for disrupting Kleinheksel's assistant with persistent inquiries about job opportunities.

-3-

Plaintiff's concerns that he was being harassed and discriminated against because of his 2000 campaign. The Plaintiff also indicated during the meeting that he had concerns about questionable activity occurring in the Public Works Department which he would be disclosing at a later time in writing.

On June 19, 2003, the Plaintiff submitted a letter to Amy Krueger. The letter referenced "Public Services and Operations Concerns" and opened as follows:

> Please accept this letter as official notification of employee concerns within Collin County Public Services and Operations. The following items have been brought to my attention as possible violations of County Policy, unethical practices, and / or illegal actions by the Administration of Collin County Public Services and Operations.

Pl. Resp. to Mtn. for Summ. Judg., Exh. J. The letter delineated the Plaintiff's specific areas of concerns as follows:

1. **Lack of an open door policy.** The Plaintiff stated that when he requested a meeting with the Director of Public Services and Operations, he received a reprimand for unprofessional behavior;

2. **Hostile work environment.** The Plaintiff stated that he, along with other unnamed personnel, had been targeted for termination;

3. **Integrity.** The Plaintiff asserted that there was "no confidence and trust in the information communicated to employees";

4. **Humiliation.** The Plaintiff stated that the "Administration humiliates employees in front of others by making derogatory and negative personal remarks.";

5. **Intimidation.** The Plaintiff claimed that the employees were "scared for their jobs" and "intimidated into agreeing with questionable activities and practices.";

6. **Harassment (both sexual and mental).** The Plaintiff asserted that the Director of Public Services and Operations displayed affection publicly to the Director's assistant, creating an uncomfortable work environment for other personnel. The Plaintiff additionally stated that, generally, there were "[u]nwanted sexual advances in the form of hugs, touching, and invasion of space.";

7. **Questionable hiring practices.** The Plaintiff stated that there was a concerted effort to terminate certain employees so that current or former employees from the City of Carrollton could be hired. The Plaintiff indicated that the employees who previously worked for the City of Carrollton were not qualified for their positions but received "top pay";

8. **Inaccuracy in time sheet reporting.**

9. **Selective application of County policies and procedures.** The Plaintiff stated that the Public Services and Operations Uniform Policy was specifically created to deter him from campaigning on the job during the 2000 election. He also stated that the Uniform policy was not applied in the same manner to all employees in his department;

10. **Misuse of County vehicle and car allowances.** The Plaintiff asserted that County vehicles were being used for personal gain;

11. **Unprofessional actions.** The Plaintiff complained about the public use of offensive language; and

12. **Personal questions.** The Plaintiff stated that he was questioned about his desire to run for the office of County Commissioner prior to being interviewed for the position of Assistant Director.

Pl. Resp. to Mtn. for Summ. Judg., Exh. J. After submitting the letter, the Plaintiff met with Bill Bilyeu (Administrator for Collin County) and Amy Krueger to discuss the concerns raised in the Plaintiff's letter of the same date. The Plaintiff indicated that his letter was more specifically referring to Kleinheksel. The Plaintiff subsequently met with Amy Krueger on July 2, 2003 to further discuss the contents of his June 19, 2003 letter.

On July 16, 2003, Amy Krueger sent the following memorandum to the Plaintiff:

Bill Bilyeu, Director of Administrative Services, conducted his own investigation in regards to the items reported by Dave James' [sic] in his letter dated 06/19/03.

As a result of Mr. Bilyeu's findings, John [sic] Kleinheksel, Director of Public Services and Operations, has been placed on six months probation, effective 07/15/03.

Pl. Resp. to Mtn. for Summ. Judg., Exh. L.

Thereafter, on October 22, 2003, Kleinheksel issued a memorandum to the Plaintiff acknowledging the Plaintiff's second bid for the office of County Commissioner. In the memorandum, Kleinheksel stated as follows:

> Per the October 21, 2003 McKinney Courier Gazette, you have obviously expressed your intention to seek the office of Collin County Commissioner during the year 2004 campaign. As the County Personal [sic] Policy Manual states in Section 9.6 Political Involvement:
>
>> **"Collin County employees will not be allowed to perform or be involved in political campaigning or related activities during their normal working hours, while in County uniform, or while using County vehicular equipment. Additionally, no County employee shall be required to participate in political campaigns or related activities as a condition of obtaining or retaining employment."**

Pl. Resp. to Mtn. for Summ. Judg., Exh. Q.[2]

---

[2] Apparently, Kleinheksel's reference to Section 9.6 of Collin County's Personnel Policy Manual was in error. The Personnel Policy Manual was superseded by Collin County's Employee Handbook on September 1, 2003. The Employee Handbook, however, provides as follows:

> ***Political Involvement***
>
> Collin County employees are not permitted to perform or be involved in political campaigning or related activities, whether paid or voluntary in the following circumstances:
>
> - during normal working hours, or on paid overtime
> - while in county uniform
> - while using county vehicles
>
> ***Solicitation and Distribution***
>
> . . . individuals are not permitted to solicit, survey, petition, or distribute literature during work time. Work time includes both the soliciting and the solicited employee's work time.

Def. Mtn. for Summ. Judg., Def. App. 51. The Plaintiff was aware of these policies during his employment at Collin County. *Id.* at 12-13. Additionally, although there is some dispute as to whether

-6-

On November 20, 2003, the Plaintiff was in the Collin County courthouse on personal time. The Plaintiff approached Collin County employee Debbie Brockman while she was working at the courthouse and asked her for her support in his campaign against current County Commissioner Joe Jaynes.[3] Shortly after her conversation with the Plaintiff, Ms. Brockman reported the incident to Bill Bilyeu. On December 1, 2003, Kleinheksel, through Bill Bilyeu, issued a written warning to the Plaintiff, the content of which is as follows:

> Debbie Brockman met with Bill Bilyeu on November 26, 2003, concerning an unsolicited and inappropriate discussion she had with you on November 20, 2003. You solicited Ms. Brockman's political support during her normal working hours and within the County Courthouse. Your discussion was a violation of the intent of my October 22, 2003 memo to you and also Section 9.6 of the County Personnel Manual. Your political campaigning cannot take place during your work hours nor may you campaign to other County employees during their work hours.
>
> Personal attacks upon the character of elected officials to employees during their working hours are inappropriate and will be considered insubordination.

Pl. Resp. to Mtn. for Summ. Judg., Exh. T.

After receiving the reprimand, the Plaintiff requested a meeting with Bill Bilyeu. Sometime in December 2003, the Plaintiff met with Bill Bilyeu, Kleinheksel and Cynthia Jacobson, Director of Human Resources. During the meeting, Bill Bilyeu and Cynthia Jacobson allege that the Plaintiff became hostile, raised his voice and threatened Bill Bilyeu and his family. The Plaintiff denies such allegations.

---

Collin County ratified its County Building / Ground Use Policy or whether the Plaintiff received a copy of the same, it appears that the Plaintiff was aware that he was not permitted to post signs, posters, handbills, or notices in, on or about Collin County's facilities without the prior written approval of the facilities manager. *Id.* at Def. App. 14, 29:6-10.

[3]Ms. Brockman averred that the Plaintiff expressed negative and derogatory opinions about Mr. Jaynes. The Plaintiff disputes such allegations.

On March 9, 2004, the Plaintiff lost his bid for County Commissioner in the primary election. On March 15, 2004, Kleinheksel and Cynthia Jacobson met with the Plaintiff to inform him that his employment with Collin County was terminated. The Plaintiff subsequently filed his original complaint on March 11, 2005, claiming that he was retaliated against for exercising his First Amendment rights of freedom of speech and freedom of association and expression.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The substantive law identifies which facts are material. *See id.* at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by

showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257.

## DISCUSSION AND ANALYSIS

"The government may not constitutionally compel persons to relinquish their First Amendment rights as a condition of public employment." *Harris v. Victoria Independent School District*, 168 F.3d 216, 220 (5th Cir. 1999). In order to establish a First Amendment retaliation claim, the Plaintiff must satisfy the following four elements:

"(1)  an adverse employment action;

(2)  speech involving a matter of public concern;

(3)  the employee's interest in speaking outweighs the employer's interest in efficiency; and

(4)  the speech must have precipitated the adverse employment action."

*Kennedy v. Tangipahoa Parish Library Board of Control*, 224 F.3d 359, 366 (5th Cir. 2000) (citation omitted). The first, second and third issues are legal in nature and are, therefore, subject to the court's resolution. *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (citation omitted). *Coughlin v. Lee* also makes it clear that the third issue is indeed an issue for the court to resolve. *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991) ("Only if the court finds that the employee's First Amendment rights outweigh the government's interest in the effective provision of public services does the fact-finder proceed to consider the separate issue of causation."). "It is for a jury

to resolve any remaining factual disputes as to whether plaintiff's protected speech was a substantial or motivating factor in the adverse employment decision, or whether the employer would have made the same employment decision in the absence of the protected speech." *Branton*, 272 F.3d at 739 (citation omitted). "[T]he employee has the initial burden of demonstrating (1) that his conduct was protected by the First Amendment, and (2) that this conduct was a 'substantial' or 'motivating' factor in the employer's action. If the employee survives this threshold, the burden then shifts to the employer (3) to show, by a preponderance of the evidence, a legitimate reason for which it would have taken the same action against the employee even in the absence of this protected conduct. The employee can then refute this assertion by showing that the employer's proffered explanation is merely pretextual." *Click v. Copeland*, 970 F.2d 106, 113 (5th Cir. 1992) (citations omitted).

    A.    THE JUNE 19, 2003 LETTER

With respect to the Plaintiff's June 19, 2003 letter, the dispute centers on the second element, that is, whether the Plaintiff's speech involved a matter of public concern. *See Kennedy*, 224 F.3d at 366. The Fifth Circuit has "used two tests, sometimes in conjunction with one another, to determine whether speech relates to a public concern; both tests derive from language in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)." *Id*. "The first test is the content-form-context test: '[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole court record.'" *Id*. (citations omitted).

"The second, 'shorthand' test is the citizen-employee test: 'when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters *only* of personal interest,' the employee's speech falls outside the parameters of speech involving matters

of public concern." *Id*. (citations omitted). "The citizen-employee test can yield indeterminate results because '[t]he existence of an element of personal interest on the part of an employee in the speech does not prevent finding that the speech as a whole raises issues of public concern.'" *Id*. (citation omitted). "Thus, '[i]n cases involving mixed speech, [the court is] bound to consider the *Connick* factors of content, context, and form, and determine whether the speech is public or private based on these factors.'" *Id*. (citation omitted).

The instant case is one of "mixed speech." *See id*. The Plaintiff spoke in his capacity as a citizen when he made allegations about questionable hiring practices, inaccuracies in time sheet reporting and misuse of County vehicles. However, the Plaintiff also spoke as an employee when he addressed the remaining issues concerning working conditions. "Mixed speech cases are perhaps the most difficult subset of employee speech cases to adjudicate." *Id*. at 367. "Because the employee admittedly speaks from multiple motives, determining whether [he] speaks as a citizen or employee requires a precise and factually-sensitive determination." *Id*.

"First, the content of the speech may relate to the public concern if it does not involve solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of the manager's status as an arm of the government." *Id*. at 372. "If releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature." *Id*. It is not necessary for the speech to be made to the public. *Id*. However, "the speech cannot be made in furtherance of a personal employer-employee dispute if it is to relate to the public concern."

With respect to the content of the Plaintiff's speech, it is clear that portions of the Plaintiff's letter involved matters of public concern. Speech that potentially affects an inappropriate use of the

-11-

taxpayers' money relates to a public concern. *See id*. at 373. "Speech exposing official misconduct involves the public concern." *Id*. Here, the Plaintiff's letter apparently exposed Kleinheksel's misconduct which led to Kleinheksel's probationary status. However, while the Plaintiff did speak to matters of public concern, the majority of the Plaintiff's letter involved disputes over working conditions (which are private in nature).

Turning to the context of the Plaintiff's speech, the letter was of a private nature. The Plaintiff did not release the letter to the press or otherwise seek to publicize it. *See id*. at 374. Further, the investigation stemming from the Plaintiff's letter was an internal, rather than a public, investigation. Accordingly, the context of the Plaintiff's speech was private.

Finally, the form of the Plaintiff's speech indicates that it was private in nature. *See id*. Specifically, the Plaintiff addressed the letter to the Human Resources Department in the context of an employer-employee dispute. *See id*. Notably, the letter reveals that the Plaintiff's working relationship with his superior was unpleasant. *See id*. As such, the court concludes that the form of the Plaintiff's speech was private.

In weighing these factors, the court concludes that although the Plaintiff spoke on matters of private and public concern, the Plaintiff's letter was primarily motivated by, and primarily addressed, concerns particular to the Plaintiff's private interests. *See Teague v. City of Flower Mound, Texas*, 179 F.3d 377, 383-84 (5th Cir. 1999). Accordingly, the letter is not protected by the First Amendment. *See Mars v. Shepard*, 2005 WL 1865556, *9 (E.D. Tex. 2005)(Folsom, J.).

### B. RUNNING FOR PUBLIC OFFICE

It is undisputed that the Plaintiff's conduct of running for public office addressed matters of public concern. *See Click*, 970 F.2d at 112. Once the Plaintiff survives this threshold, "the court

must strike 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern [against] the interest of the [County], as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id*. at 111, quoting *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). When evaluating an employer's actions taken in alleged retaliation of protected conduct, the court must "'balance the First Amendment values implicated by those activities against the possible disruptive effect on governmental provision of services within the specific context of each case.'" *Id*. at 112, quoting *Coughlin v. Lee*, 946 F.2d 1152, 1158 (5th Cir. 1991) (internal citation omitted).

The *Pickering* "'balancing test is not all-or-nothing but rather a sliding scale under which 'public concern' is weighed against disruption: 'a stronger showing of disruption may be necessary if the employee's speech more substantially involves matters of public concern.'" *Id*. (citations omitted). "Factors to weigh in the balancing include: (1) whether the employee's actions involve 'public concerns'; (2) whether 'close working relationships' are essential to fulfilling the employee's public responsibilities; (3) the time, place, and manner of the employee's activity; (4) whether the activity can be considered 'hostile, abusive, or insubordinate'; and (5) whether the activity 'impairs discipline by superiors or harmony among coworkers.'" *Id*. (citations omitted).

Here, the Defendants argue that if the Plaintiff's speech was a substantial or motivating factor in his termination (a fact which the Defendants dispute), then the Defendants' interest in efficiency outweighed the Plaintiff's interest in speaking. The Defendants argue that "it was [the Plaintiff's] disruption of the workplace by confronting County employees to solicit their vote during working hours, **not** merely his decision to run for office, that the County perceived as grounds for termination." Def. Mtn. for Summ. Judg., pp. 22-23. The Defendants further contend that the

County's interest in promoting the efficiency of the services it provides through its employees outweighed the Plaintiff's interest in campaigning to County employees during their working hours on County property. Indeed, the undisputed evidence before the court is that the Plaintiff solicited Debbie Brockman's vote while she was working. Additionally, the Plaintiff was verbally instructed in February 2004 to discontinue posting campaign paraphernalia on Collin County property. Because this balancing test is legal in nature and is for the court to resolve (*see Branton*, 272 F.3d at 739; *Coughlin*, 946 F.2d at 1157), and because the County has a legitimate interest in ensuring that County employees such as Debbie Brockman are not interrupted during their working hours by the political campaigning of other employees, the court concludes that the County's strong interest in promoting efficiency by protecting County employees from interruption during working hours clearly outweighed the Plaintiff's interest in political speech. Accordingly, the Plaintiff's speech in soliciting Brockman's political support during her working hours was not protected by the First Amendment.

### C. THE COMMISSIONERS

The Plaintiff sued the Collin County Commissioners (Joe Jaynes, Phyllis Cole, Jerry Hoagland and Jack Hatchell) and Ron Harris, Collin County Judge, in both their individual and official capacities. The Plaintiff contends that a March 16, 2004 *Dallas Morning News* article reported that Joe Jaynes "excused himself from the closed-door discussion among county commissioners last week that led to Mr. James' termination." Pl. Resp. to Mtn. for Summ. Judg., Exh. V. The Plaintiff contends that the newspaper article establishes that the County Judge and Commissioners were involved in the decision to terminate the Plaintiff's employment and, therefore, are liable in their individual capacities. The Plaintiff presented no additional summary judgment

evidence regarding the Commissioners Court's involvement in the Plaintiff's termination.

The Defendants, however, state that Bill Bilyeu made the decision to terminate the Plaintiff's employment, not the Commissioners Court. Def. Mtn. for Summ. Judg., Def. App. 4. The Defendants further assert that Bill Bilyeu merely informed the Commissioners Court of his decision to terminate the Plaintiff's employment. The court concludes that the Plaintiff has failed to establish a genuine issue of material fact that the Commissioners and County Judge, in their individual capacities, were involved in the decision to terminate the Plaintiff's employment with Collin County.[4]

## CONCLUSION

Based on the foregoing, the court concludes that the Defendants' motion for summary judgment (docket entry #37) is **GRANTED**. The Plaintiff's motion to strike evidence (docket entry #39) and the Defendants' objections and motion to strike Plaintiff's summary judgment evidence (docket entry #44) are **DENIED**.

**SIGNED this the 4th day of May, 2007.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

---

[4]In a footnote, the Defendants argue that the Plaintiff failed to specify in what capacity Kleinheksel was sued. The Defendants contend that the Plaintiff cannot maintain a cause of action against Kleinheksel in his individual capacity because Kleinheksel was not involved in the decision to terminate the Plaintiff's employment. The court notes that the Plaintiff states in his complaint that Kleinheksel was acting under color of state law. Since the Plaintiff did not specifically state in any of his responsive briefing in what capacity Kleinheksel was sued and since the complaint only gives notice of suit to Kleinheksel in his official capacity, the court concludes that Kleinheksel was sued solely in his official capacity.